1    **WO**

2

3

4

5

6                        IN THE UNITED STATES DISTRICT COURT

7                           FOR THE DISTRICT OF ARIZONA

8

9    Rick Ori,                          )    No. CV-2005-697-PHX-ROS
                                        )
10             Plaintiff,               )    **OPINION AND ORDER**
                                        )
11   vs.                                )
                                        )
12                                      )
     American   Family   Mutual   Insurance)
13   Company, a foreign corporation,    )
                                        )
14             Defendant.               )
                                        )
15   _____)

16

17          Pending before the Court is Plaintiff's Motion to Compel Appraisal. [Doc. #10]. For

18   the reasons stated below, the motion is granted.

19                                   **BACKGROUND**

20          On August 4, 2004, a fire occurred in a garbage can outside the home of Plaintiff Rick

21   Ori ("Ori"). [Resp. to Pl.'s Mot. to Compel Appraisal ¶ 2]  The fire was contained to the

22   exterior of the home and an interior wall.  [Id.]  Plaintiff had previously contracted with

23   Defendant American Family Mutual Insurance Company ("American Family") for insurance

24   on the home.  Under the parties' insurance agreement, American Family had agreed to cover

25   damage to Ori's property caused by fire and smoke.[1] [O'Toole Aff. ¶¶ 5,6]  American Family

26

27   _____

28          [1]Neither party provided a complete copy of the insurance policy.  But there does not
     appear to be any dispute that damage by smoke and fire is a covered event under the policy.

obtained an estimate of $8,310.43 for cleaning and repairs.  [Resp. to Pl.'s Mot. Compel Appraisal ¶ 3]  Ori retained a public adjuster who submitted a substantially higher repair estimate of $63,289.33. [Id. ¶4]  The difference in estimates is largely due to disagreement about whether the ceiling needs to be dropped to remove the smoke odor, whether the entire home needs to be repainted and the carpet re-cleaned, and whether all of the furniture needs to be removed, stored, and replaced (Id. ¶ 6).

The insurance policy between Ori and American Family provides:

> If **you** [Ori] and **we** [American Family] fail to agree on the amount of loss, either may demand an **appraisal** of the loss.  In this event, each party will choose a competent and disinterested appraiser within 20 days after receiving a written request from the other.  The two appraisers will choose a competent and disinterested umpire.  If they cannot agree upon an umpire within 15 days, **you** or **we** may request that the choice be made by a judge of a court of record in the state where the insured premises is located.   The appraisers will separately set the amount of loss.  If the appraisers submit a written report of an agreement to **us**, the amount agreed upon will be the amount of loss.  If they fail to agree within a reasonable time, they will submit their differences to the umpire.   Written agreement signed by any two of these three will set the amount of loss.

[O'Toole Aff. Ex. 1].  Because the parties had obtained different repair estimates, Ori requested an appraisal of the amount of loss on September 15, 2004. [O'Toole Aff. Ex. 2 at Ori 000018].  American Family refused Ori's request for appraisal, asserting that "cause of loss, scope of repairs, and direct physical loss" are coverage issues not subject to appraisal and many of Ori's requested repairs were "not needed."  [O'Toole Aff. at Ori 000013-14].  American Family also stated that Ori "did not repair or replace fire damaged building materials prior to having the interior of the house cleaned" which resulted in further damage not covered under the policy.  [Resp. to Pl.'s Motion to Compel Appraisal ¶ 5].  Finally, American Family concluded that there was only a $153.00 difference between its repair estimate and Ori's repair estimate once unnecessary items were removed from the estimate.  American Family offered to simply pay this difference and thereby avoid appraisal.  Ori responded to these claims by reaffirming his belief that there was a dispute over the amount of loss and insisted upon appraisal.  [Ori 000005]

1    On February 1, 2005, Ori filed suit against American Family in Maricopa County
2    Superior Court.  That suit alleged bad faith and breach of contract.  Ori filed a Motion to
3    Compel Appraisal at the same time he filed his complaint. [Reply @ 7]  On March 4, 2005,
4    American Family removed this action to Federal District Court pursuant to 28 U.S.C. §§
5    1332, 1441, and 1446. [Doc. #1].  Ori renewed his Motion to Compel Appraisal before this
6    Court on July 11, 2005. [Doc. #10].

**JURISDICTION**

8    Ori is a citizen and resident of Arizona and American Family is a Wisconsin
9    corporation with its principal place of business in Madison, Wisconsin. (Doc. # 1)  Ori seeks
10    contract damages in excess of $63,000 and also seeks bad faith and punitive damages.  Thus,
11    it does not appear to a legal certainty that Ori's claims are below $75,000 in value.
12    Therefore, the Court has jurisdiction in this cause of action pursuant to 28 U.S.C. § 1332.

**DISCUSSION**

14    The Federal Arbitration Act (FAA) creates "a body of federal substantive law of
15    arbitrability, applicable to any arbitration agreement within the coverage of the Act." Moses
16    H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983).  The FAA applies to
17    any "written provision in . . . a contract evidencing a transaction involving commerce." 9
18    U.S.C. § 2.  The FAA includes a broad definition of the term commerce, 9 U.S.C. § 1, and
19    the insurance policy at issue here falls under that definition.  See Wailua Assoc. v. Aetna
20    Casualty & Sur. Co., 904 F. Supp. 1142, 1147 n.2 (D. Haw. 1995) (stating that insurance
21    contracts have long been recognized as involving commerce); Perry v. Thomas, 482 U.S.
22    483, 490 (1987) (holding FAA "embodies Congress' intent to provide for the enforcement
23    of arbitration agreements within the full reach of the Commerce Clause").  The FAA does
24    not, however, include a definition of the term "arbitration."  In the Ninth Circuit, courts may
25    look to state law definitions of that term for guidance.  Wasyl, Inc. v. First Boston Corp., 813
26    F.2d 1579, 1582 (9th Cir. 1987) (looking to California law for guidance); but see Salt Lake
27    Tribune Publishing Co., LLC v. Management Planning, Inc., 390 F.3d 684, 689 (10th Cir.

2004) (holding that Congress did not intend for definition of "arbitration" to vary by state). Arizona courts have concluded that "appraisal is analogous to arbitration" and the "principles of arbitration law" should be applied to proceedings involving appraisals. Meineke v. Twin City Fire Insurance Co., 892 P.2d 1365, 1369 (Ariz. Ct. App. 1995). Thus, the appraisal clause at issue here falls under the FAA.[2] The terms "appraisal" and "arbitration" are used interchangeably throughout this order.

Pursuant to the FAA, arbitration agreements are "valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA also allows District Courts to compel arbitration where necessary. 9 U.S.C. § 4. But a court is very limited in its power to refuse a motion to compel arbitration. As observed by the Supreme Court, the FAA "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4). Thus, "agreements to arbitrate must be enforced, absent a ground for revocation of the contractual agreement." Id. Such grounds for revocation include "generally applicable contract defenses, such as fraud, duress, or unconscionability." Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 687 (1996). Waiver of the arbitration clause is also a possible defense. Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 25 (1983).

In its Response to the Motion to Compel Appraisal, American Family presents two arguments. First, that Ori waived the right to an appraisal. Second, that Ori is seeking to "use the appraisal process to determine the scope and existence of coverage, not to resolve a valuation dispute." The Court addresses each argument below.

## I. Waiver

---

[2]The parties seem confused as to whether Arizona or federal law should apply to the arbitration clause. Neither party squarely addresses which arbitration regime should apply. There is, however, a "strong default presumption . . . that the FAA, not state law, supplies the rules for arbitration." Sovak v. Chugai Pharmaceutical Co., 280 F.3d 1266, 1269 (9th Cir. 2002). Therefore, the Court has analyzed the issues presented under federal law.

1    "A party seeking to prove waiver of a right to arbitration must demonstrate: (1)

2    knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing

3    right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent

4    acts." Fisher v. A.G. Becker Paribas Inc., 791 F.2d 691, 694 (9th Cir. 1986). "Because

5    waiver of the right to arbitration is disfavored, 'any party arguing waiver of arbitration bears

6    a heavy burden of proof.'" Id. (quoting Belke v. Merrill Lynch, Pierce, Fenner & Smith, 693

7    F.2d 1023, 1025 (11th Cir.1982)). American Family claims that Ori knew about his right to

8    arbitrate and that he failed to file a motion to compel arbitration until four months after the

9    case was removed to federal court. [Response @ 5] This four-month delay, according to

10   American Family, should be interpreted as an act inconsistent with Ori's right to arbitration.

11   American family concedes, however, that Ori "attempted to arbitrate pre-litigation and

12   originally requested arbitration at the same time of the state court filing." [Id.] There is,

13   therefore, some dispute over whether Ori's actions were inconsistent with a desire to

14   arbitrate.  But even if the Court were to agree that Ori's delay in reasserting his right to

15   arbitration was inconsistent with his wish to arbitrate, the question of prejudice would

16   remain.

17        Prejudice in this context may consist of expense, duplication of effort in separate

18   forums, or advantage to the other party. Mitsui & Co. (USA) v. C & H Refinery, Inc., 492

19   F. Supp. 115, 118-20 (N.D. Cal.1980).  There is no obvious evidence of prejudice and

20   American Family "made no attempt . . . to articulate how [it] was prejudiced" by the four-

21   month delay.  Sovak v. Chugai Pharmaceutical Co., 280 F.3d 1266, 1270 (9th Cir. 2002).

22   Accordingly, American family did not carry its "heavy burden of proof" and the Court

23   concludes that Ori did not waive his right to arbitration. Fisher, 791 F.2d at 694 (quotation

24   omitted).

25   **II. Scope of the Agreement**

26        American Family's second argument against compelling the parties to proceed via

27   arbitration is that Ori is seeking relief outside the scope of the arbitration clause.  The

28

1   appraisal clause provides that in the event Ori and American Family "fail to agree on the
2   amount of loss, either may demand an appraisal of the loss." American Family contends that
3   the controversy in this case is "the scope of the repairs to be done, the amount of repairs
4   covered, [and] the actual work that is required to be done under the policy." [Response @
5   7] These issues, according to American Family, do not involve the "amount of loss." This
6   argument runs counter to established law and the facts contained in the record.

7        The Supreme Court has made clear that "any doubts concerning the scope of arbitrable
8   issues should be resolved in favor of arbitration, whether the problem at hand is the
9   *construction of the contract language itself* or an allegation of waiver, delay, or a like defense
10  to arbitrability." Mercury Const. Corp., 460 U.S. at 24-25 (emphasis added). Also, "due
11  regard must be given to the federal policy favoring arbitration, and ambiguities as to the
12  scope of the arbitration clause itself resolved in favor of arbitration." Volt Info. Scis., Inc.
13  v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 476 (1989). Accordingly,
14  the record in this case must be evaluated in light of this strong preference in favor of
15  allowing Ori to invoke the appraisal clause.

16       According to the estimates in the record, Ori appraises loss due to the fire at
17  $63,289.33 and American Family appraises loss at $8,646.36. The difference between the
18  two figures stems from the parties' disagreement about the repairs necessary to restore the
19  home to its pre-fire state. For example, the parties agree that the fire caused a smoke smell
20  to build up in a ceiling cavity. Ori believes that the ceiling will have to be removed to
21  facilitate the cleaning of damaged materials; American Family counters that alternative
22  methods of cleaning will be sufficient and the ceiling need not be removed. The Court
23  concludes that this type of disagreement is a disagreement about the "amount of loss" and is
24  subject to arbitration.
25

26       The term "amount of loss" "necessarily includes . . . the amount it would cost to repair
27  that which was lost." Cigna Insurance Co. v. Didimoi Property Holdings, N.V., 110 F. Supp.
28  2d 259, 264 (D. Del. 2000). In this case, the parties dispute how much it will cost to repair

- 6 -

1  the home and return it to its pre-fire state. Ori believes that it will cost $63,289.33 to repair
2  the home while American Family believes that it will only cost $8,646.36. The Court
3  believes that a good faith dispute over the cost of necessary repairs is a dispute over the
4  "amount of loss" and is subject to appraisal.[3] Therefore, Ori was within his rights to demand
5  appraisal.[4]

6  **III. Stay of Proceedings**

7          Having determined that Ori was entitled to invoke the appraisal clause, the Court must
8  issue a stay as to the claims subject to that appraisal. 9 U.S.C. § 3. There are, however, other
9  claims that are not subject to appraisal. The Court must determine if those claims should also
10  be stayed or if they should be allowed to proceed. "Important factors to consider when
11  determining whether the non-arbitrable issues should proceed include the predominance of
12  the arbitrable claims, the merit of the non-arbitrable claims, the court's concern with
13  controlling its own docket, and overall judicial economy." F.D. Imp. & Exp. Corp. v. M/V
14  REEFER SUN, 248 F. Supp. 2d 240, 251 (S.D.N.Y. 2002). In this case, the claims subject
15  to appraisal will have a large impact on the non-appraisal eligible claims. If Ori prevails at
16  the appraisal for the full amount of damages, that result would support his claim that
17  American Family acted in bad faith in denying his request for appraisal. Also, the Court
18  believes that appraisal may result in a settlement of the non-appraisal eligible claims. Thus,
19

20          [3]In fact, in a letter claiming that no "amount of loss" dispute existed, American Family
21  acknowledged that there was a $153.00 difference between American Family's estimate and
22  Ori's estimate as corrected by American Family. American Family claims that it is willing
    to pay this difference and thereby avoid appraisal. Thus, American Family seems to admit
23  that differences in the parties' estimates may be grounds to warrant appraisal.

24          [4]American Family makes one final argument connected to the "amount of loss"
25  argument. American Family asserts that some of the damages are a direct result of Ori's
    failure to repair or replace damaged material in a timely fashion. This alleged failure
26  constituted a breach of the insurance contract and caused further damage to Ori's property.
27  The Court concludes that appraisal will sufficiently address these concerns. An appraisal
    will determine the amount of loss due to the covered event (the fire); any loss not due to that
28  event should not be included in the appraisal.

staying the non-appraisal eligible claims is the most effective method of conducting this litigation. In light of these considerations, all non-appraisal eligible claims in this matter are stayed pending the appraisal.

Accordingly,

ITS IS **ORDERED** that Plaintiff's Motion to Compel Appraisal (Doc. #10) is **GRANTED**.

DATED: _11/15/05_ .

Roslyn O. Silver
United States District Judge